UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MAHENDRA SHAH,<br><br>    Plaintiff,<br><br>    v.<br><br>TUNXIS COMMUNITY COLLEGE,<br><br>    Defendant. | No. 3:14-cv-00712 (MPS) |

## RULING ON PENDING MOTIONS

Mahendra Shah ("Shah" or "Plaintiff"), proceeding *pro se*, has sued Tunxis Community College ("Tunxis" or "Defendant"), alleging that Tunxis discriminated against him based on his national origin and retaliated against him for complaining about discriminatory treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (Compl., ECF No. 1.) Defendant has moved to dismiss the operative complaint for failure to state a claim on which relief can be granted.

For the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss, denies Plaintiff's motion for leave to file his second amended complaint, and denies as moot Defendant's motion to stay discovery pending resolution of the renewed motion to dismiss.

**I.    BACKGROUND**

Shah alleges the following facts, which are taken as true for the purposes of evaluating Defendant's motion to dismiss. Shah was born in India and is currently a full professor of Computer Information Systems ("CIS") at Tunxis. (Am. Compl. at 8.) He began working at Tunxis in 1976 (*id.* at 26), first in an administrative capacity as a business manager, and beginning in 1982, as a professor. (*Id.* at 8.)

1

Shah alleges that Tunxis discriminated against him by failing to promote him to the position of CIS Program Coordinator because of his national origin. (*Id.* at 3, 7-8.) Shah first became aware of the CIS Program Coordinator vacancy after receiving an April 10, 2012 e-mail from Dean Michael A. Rooke ("Rooke"), Dean of Academic Affairs at Tunxis, which stated that Laura Gambino ("Gambino") would no longer be serving as CIS Program Coordinator during the following academic year. In his e-mail, Rooke also stated that "I will be working with Candy to identify who can serve the program in that role for the fall and beyond. If either of you have any thoughts or questions, please let me know by April 30th." (*Id.*, Ex. 10, ECF No. 26-1 at 34.) This e-mail was addressed to Shah and Professor John F. Kriscenski ("Kriscenski"), the only other full-time CIS professor at Tunxis. Shah did not respond to this e-mail and did not notify Rooke that he was interested in the position. (Am. Compl. at 26.) On August 21, 2012, Rooke sent an e-mail to Tunxis employees announcing that Professor Andre Blaszczynski ("Blaszczynski") had been appointed CIS Program Coordinator. (*Id.* at 25.)

Shah's 124-page Amended Complaint alleges two instances in which Tunxis failed to promote him to the position of CIS Program Coordinator: (1) on August 21, 2012, when Tunxis appointed Blaszczynski to the position (*Id.* at 3, 7-8); and (2) on May 21, 2013, when Shah "was told that when a new CIS faculty member is hired[,] that person would become the CIS program coordinator." (*Id.* at 8.) Shah also alleges that Tunxis has been retaliating against him ever since he filed a complaint with the Connecticut Commission of Human Rights and Opportunities ("CHRO") in 1988-89. (*Id.*) Shah asserts that, in the spring and summer of 2012, Tunxis canceled several of his scheduled courses and denied him the opportunity to teach other courses that he had requested, in retaliation (1) for his complaints about discrimination to the CHRO in 1988-89, and (2) for his complaints to Rooke in early 2012. (*Id.* at 8-9, 36.) In February 2012, Shah complained to Rooke that he "was being treated unequally with faculty who were receiving

release time for doing less time consuming work."[1] (*Id.* at 36, 52.) Shah requested information about the release time for all other faculty members in order to gather evidence that the unequal treatment was because of his "ethnic background." (*Id.* at 52.) Then, in the spring and summer of 2012, Tunxis did not promote him to CIS Program Coordinator, did not select him for the system-wide technology committee, and denied his request "to teach Practicum, the final course in the CIS program." (*Id.* at 52-53.) Instead, marketing professor Amy Feest ("Feest") was assigned to the system-wide technology committee, and the Practicum course was given first to Feest, and later to Jason Iorio, "a part-time faculty member" with "limited teaching experience" and fewer academic qualifications than Shah. (*Id.* at 52-53.) Shah had been scheduled to teach an evening CIS course in the summer of 2012, and he alleges that Tunxis created an additional section of the same course so that both classes would be undersubscribed, forcing their cancellation.[2] (*Id.* at 13, 53, 62.) Finally, Shah's Amended Complaint also lists the failure to promote him to CIS Program Coordinator as a retaliatory adverse action. (*Id*. at 53)

Shah filed charges with the CHRO and the Equal Employment Opportunity Commission ("EEOC") on June 13, 2013 (*id*. at 10, 26), and the EEOC issued him a Notice of Right to Sue letter on February 18, 2014 (*id.* at 15-16), which he received on or about February 21, 2014. (*Id.* at 4, 10.) In this action, Shah seeks backpay at a rate of $1,500 per semester since the fall

---

[1] "Release time" or "course releases" are unpaid reductions in professors' required teaching loads in exchange for other services outside of teaching. *See* Terrance Adams, *Faculty Course Release Policies*, OLR Research Report, November 14, 2011, http://www.cga.ct.gov/2011/rpt/2011-R-0382.htm.

[2] At other points in Shah's complaint, he suggests that forced course cancellations occurred during the summer of 2013. Shah alleges that the class cancellations occurred during the summer after Gambino resigned. (*See* Am. Compl. at 45.) It is unclear, however, which year Gambino resigned. Shah first stated that Gambino "resigned from the college effective at the end of the 2011-2012 academic years" (*id*. at 8). Later in his Amended Complaint, Shah stated that Gambino "resigned from the college" at the end of the spring 2013 semester. (*Id*. at 45.) If Shah intends to bring a claim involving a summer 2013 summer course cancellation, he must file an Amended Complaint, within fourteen days of this ruling, adding only allegations addressed to that issue.

3

semester of 2012, back pay in the amount of $4,650 for a 2012 summer course that was canceled, and an injunctive order that he be appointed to the position of CIS Program Coordinator. (*Id.* at 13.)

## II.  STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, the Court examines the complaint to determine if it is sufficient to state a claim. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). Moreover "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). On a motion to dismiss—even for a *pro se* plaintiff—the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "After the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

## III.  DISCUSSION

### A.  Discriminatory Failure to Promote

In the proof phase of an employment discrimination case, claims for discriminatory failure to promote are analyzed using the burden-shifting framework established in *McDonnell*

4


*Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first part of that framework requires that a plaintiff make out a *prima facie* case. To establish a *prima facie* case of a discriminatory failure to promote, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004). That formulation of the *prima facie* case, however, is not exclusive, and it has been more broadly described as requiring the plaintiff to show that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *id.* n.6 (noting that the *McDonnell Douglas* framework "is not inflexible, as the facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required . . . is not necessarily applicable in every respect in differing factual situations."). Further, a motion to dismiss precedes the proof phase of a discrimination case, and focuses instead on the allegations of the complaint, which need not satisfy *McDonnell Douglas* standards. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002) (employment discrimination complaint need not set forth "specific facts establishing a prima facie case of discrimination" under *McDonnell Douglas*). Nonetheless, "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks and citations omitted).

Tunxis does not dispute that Shah is a member of a protected class or that he was qualified for the position of CIS Program Coordinator. Instead, Tunxis argues that Shah "did not

present any factual allegations that would give rise to an inference of discrimination" and "failed to provide any factual allegations that he ever actually applied for the position." (Def.'s Br., ECF No. 19, at 6.)

### 1. Inference of Discrimination

"It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007) (internal quotation marks omitted). "Plaintiff is . . . required to allege some facts—not mere conclusions—plausibly suggesting that the decision to pass [him] over for the promotion . . . was made because of plaintiff's [protected status]." *Hussey v. New York State Dep't of Law/Office of Atty. Gen.,* 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013). "Failure to plead facts that 'create an inference that any adverse action taken by any defendant was based upon [a protected class]' warrants dismissal." *Alvarez v. Rosa*, No. 11 CIV. 3818 KBF, 2012 WL 651630, at *3 (S.D.N.Y. Feb. 28, 2012) (quoting *Patane,* 508 F.3d at 112 (internal punctuation omitted)).

Although some of Shah's allegations about discrimination are conclusory (*see, e.g.,* Am. Compl. at 7 ("I was born in India. I am of the Hindu religion. . . . Even though I was clearly the most qualified faculty member for this position[,] I was not appointed to the computer information systems program coordinator position because of my national origin"); *id*. at 41 ("given . . .that I have been highly active already in performing the responsibilities . . . and I have never said that I was not interested . . . Rooke must believe that people of my ethnic origin are unwilling . . . or are not suited to serve in such a responsible capacity. . . .")), his amended complaint, construed liberally, includes enough facts suggesting discriminatory treatment to survive dismissal. "[T]he allegation that the position went to a less qualified nonminority technician [is] sufficient to establish an inference of discrimination" for a failure-to-promote

6

claim. *Castillo v. Time Warner Cable of New York City*, No. 09 CIV. 7644 PAC, 2011 WL 3475419, at *6 (S.D.N.Y. Aug. 9, 2011). Shah pleads enough facts to suggest that Blaszczynski, a non-Indian, is less qualified for the position of CIS Program Coordinator. (Am. Compl. at 56.) Blaszczynski is a professor of economics and business who "primarily teaches economics." (*Id.* at 29.) He is not an expert in CIS content, and he "has no knowledge of computers, and no experience teaching computers." (*Id.* at 42.) In addition, the selection of Blaszczynski as CIS Program Coordinator is the only time in the history of the college that a "a program coordinator has been chosen outside of the program area." (*Id.*) Shah's pleadings also include an allegation that Shah has been "treated different [sic] than other faculty members" since before Shah filed his CHRO complaint in 1988-89. (*Id.* at 61.) For example, Tunxis often assigned Shah "courses each semester that have the highest probability of having the lowest student enrollment and the best chance of being cancelled." (*Id.* at 60-61.) Taken together and construed liberally, these allegations are enough to make it plausible that the failures to promote him to CIS Program Coordinator on August 21, 2012, and May 21, 2013, were due to illegal discrimination.

### 2. Application Requirement

#### a. August 21, 2012 Failure to Promote

Shah alleges that Tunxis discriminated against him by failing to promote him to the position of CIS Program Coordinator on August 21, 2012, when it appointed Blaszczynski to the position. (Am. Compl. at 3, 7-8.) Because Shah fails to allege facts suggesting that he expressed to his employer any interest in this position, however, his allegations with respect to the August 21, 2012 failure to promote fail to state a claim.

"Some courts hold that a plaintiff['s] claim must be dismissed if [it] fail[s] to demonstrate that [the] plaintiff[ ] applied for a specific position. However, what it means to apply for a specific position depends on the circumstances." *Stewart v. City of New York*, No. 11 CIV. 6935

CM, 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) (internal quotation marks and citations omitted) (citing cases). In *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir. 1998), the Second Circuit held that "failure to apply and be rejected for a specific position or positions is fatal to . . . failure to promote . . . claims" at the motion to dismiss stage. *Brown* relied on the proof framework of *McDonnell Douglas,* however, and was decided before *Swierkiewicz*, 534 U.S. at 515, which, as noted, held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. "At a minimum, *Swierkiewicz* calls into question the reasoning in *Brown*, if it does not abrogate that case's holding entirely." *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 441-42 (S.D.N.Y. 2014)."[S]everal courts in [another District in this Circuit]—while recognizing *Swierkiewicz*—have nonetheless relied on *Brown* to dismiss failure-to-promote claims where plaintiff failed to allege that he or she applied for an open position." *Barrett,* 39 F. Supp. 3d at 442 (citing *Williams v. City of New York,* No. 11 Civ. 9679(CM), 2012 WL 3245448, at *6 (S.D.N.Y. Aug. 8, 2012) and *Anderson v. Davis Polk & Wardwell LLP,* 850 F.Supp.2d 392, 414 (S.D.N.Y. 2012)). *See also Dawson v. New York City Transit Auth.*, No. 1:13-CV-06593 GHW, 2014 WL 5343312, at *8 (S.D.N.Y. Oct. 21, 2014) (finding, on motion to dismiss, that "plaintiff's failure to allege plausibly that he ever applied for the job is fatal").

In *Barrett*, the court found the complaints sufficient to survive motions to dismiss when plaintiffs plausibly alleged that they were qualified for particular openings, "and allege[d] either that they applied for that position and were rejected, or that they would have applied for the position but were precluded from doing so." *Barrett*, 39 F. Supp. 3d at 443 (internal citations omitted). "[A] plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993). In *Barrett,* for example, the court found that a

8

plaintiff sufficiently stated a claim when she alleged "that she discussed a particular opening with her manager, that he emphasized that she was competing against 'two very well qualified candidates' who were both male, and that, based on his statements, she 'understood' that he 'was clearly advising her not to apply.'" *Barrett*, 39 F. Supp. 3d at 443; *but see Romaine v. N.Y. City College of Tech.,* No. 10 Civ. 431(SLT)(SMG), 2012 WL 1980371, at *3 (E.D.N.Y. May 30, 2012) (dismissing a failure to promote claim where plaintiff expressed interest in a position, but did not actually apply for the position because he believed that doing so would have been futile).

Shah does not argue, however, that Tunxis's discriminatory practices deterred his application or made applying futile. Nor does he argue that he ever expressed interest in the position prior to August 21, 2012. Rather, Shah alleges that Tunxis did not solicit applications for the CIS Program Coordinator position, and that its practice was to appoint someone to the position without considering applicants or nominations. (Am. Compl. at 37-38.) In his April 10, 2012 e-mail to Shah and Kriscenski, Rooke stated that "I will be working with Candy to identify who can serve the program in that role for the fall and beyond. If either of you have any thoughts or questions, please let me know by April 30th." (Am. Compl., Ex. 10, ECF No. 26-1 at 34.) Despite the fact that the e-mail invited a response by April 30, Shah does not allege that he responded to this e-mail or notified Rooke—in any manner—that he was interested in the position of CIS Program Coordinator.

According to an October 2012 e-mail from Rooke to Shah, Shah "had previously expressed interest [to Rooke] in playing a greater role for the college." (Am. Compl, ECF No. 26-1 at 55.) It is unclear from the Amended Complaint when Shah expressed such interest. In any event, such a general expression of interest is not enough. In *Petrosino,* the Second Circuit emphasized "that the second element of a *prima facie* case cannot be established merely with

9

evidence that a plaintiff generally requested promotion consideration." *Petrosino,* 385 F.3d at 227.

> A specific application is required to ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer. Further, the requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc. The requirement also protects employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply.

*Id.* (internal quotation marks and citations omitted).

Although "the facts of a particular case may sometimes make a specific application a quixotic requirement . . . the exception is narrow." *Petrosino,* 385 F.3d at 227 (internal quotation marks omitted). To be excused from the required submission of an application, "an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id*. Shah cannot demonstrate either requirement. Here, according to his allegations, the vacancy was informally posted (by e-mail), Shah had knowledge of the vacancy before it was filled, and he did not attempt to apply for it, or even express an interest in it, at any time.

Therefore, the Court grants Tunxis's motion to dismiss Shah's claim of discrimination with respect to the August 21, 2012 failure to promote because Shah does not assert enough "nonconclusory factual matter sufficient to nudge [his failure to promote] claim[] across the line from conceivable to plausible." *Port Auth. of New York & New Jersey*, 768 F.3d at 254.

### b.  May 21, 2013 Failure to Promote

Shah also alleges that Tunxis discriminated against him by failing to promote him when Rooke told him on May 21, 2013, that, "when we hire a new CIS faculty member[,] that person would become program coordinator." (Am. Compl. at 43.) Shah alleges that he expressed interest in, and was rejected from, the position of CIS Program Coordinator on May 21, 2013. His allegations include a statement by Kriscenski that Shah asked Rooke for the position of CIS Program Coordinator at the May 21, 2013 meeting, and that Rooke told him he would not be considered:

> At the May 21, meeting Dean Rooke did not answer any of Professor Shah's concerns about Professor Blaszczynski['s] coordination of the CIS program. . . . Dean Rooke also stated that when a new CIS faculty member is hired, that person would be made CIS program coordinator. I was very disturbed by this statement by Dean Rooke. *Professor Shah was asking to be program coordinator and Dean Rooke was telling Professor Shah that he would be passed over again as program coordinator when a new CIS faulty member is hired.*

(*Id*. at 59 (emphasis added).)

With respect to the events of May 21, 2013, Shah has sufficiently alleged that he was qualified for the CIS program coordinator, expressed interest in the position, and was rejected under circumstances giving rise to discrimination. Therefore, the Court DENIES Tunxis's motion to dismiss Shah's failure-to-promote claim with respect to May 21, 2013.

### B. Retaliation

Although Tunxis moves to dismiss Shah's amended complaint in its entirety (ECF No. 27 at 1), it does not specifically argue that Shah's claims for retaliation should be dismissed. (ECF Nos. 19, 27.) Tunxis mentions Shah's claims for retaliation for the first time in its reply brief, and states that it does not view Shah's complaint as bringing a claim for retaliation.[3] (ECF No. 33 at

---

[3] Shah did not check the box for "retaliation" in his CHRO/EEOC charge. (Am. Compl. at 26.) He mentioned retaliation in describing "the particulars" of his charge, however, and Tunxis responded to his claims for retaliation in its formal response to the CHRO/EEOC charge. (*Id.* 19-22.)

11

4.) Shah has not had an opportunity to respond to Defendant's arguments concerning retaliation, and for that reason alone, his timely claims for retaliation should not be dismissed.

Shah's Amended Complaint alleges that Tunxis canceled one of his summer courses in retaliation for his protesting (1) the failure to promote him to CIS Program Coordinator, and (2) "unequal treatment in discontinuing [his] course release time for coordinating the Microsoft testing program and the Microsoft computer testing lab." (Am. Compl. at 13.) Shah also alleges that he has "been unequally treated ever since" he filed a complaint with the CHRO in 1988-1989, in which he claimed that he suffered discrimination in being passed over for promotions. (*Id.* at 8.) Shah alleges he has been forced to teach courses that have the highest probability of being canceled and that he has not been allowed to "bump" part-time faculty when one of his regular courses was canceled, depriving him of "overload" course income for teaching a fifth course. (*Id.* at 8.) Shah's Amended Complaint also describes the failure to promote him to CIS Program Coordinator as retaliatory. (*Id*. at 53.)

Many of these claims are time-barred. "Under Title VII . . . a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006). Shah was required to file a charge of discrimination with the EEOC within three hundred days of any discriminatory conduct. 42 U.S.C. § 2000e–5(e). Shah filed his EEOC charge on June 13, 2013. (Am. Compl. at 10.) Therefore, discrete discriminatory or retaliatory acts that occurred before August 17, 2012—such as failure to promote and denial of preferred job assignments—are time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). The cancellation of Shah's classes, discontinuation of his release time, and the denial of his request to teach certain courses in the spring and summer of 2012, all occurred before August 17, 2012, and are

dismissed.[4] Such acts may be considered, however, as background evidence to support his timely claims. *Morgan*, 536 U.S. 101 at 113. Thus, the only timely claim for retaliation is based on the failure to promote him on May 21, 2013.[5]

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115. "Although Plaintiff does not need to plead every element of the prima facie case, he must still plead facts tending to demonstrate the facial plausibility of the retaliation claim." *Romaine,* 2012 WL 1980371, at *5.

"'Protected activity' includes opposition to a discriminatory employment practice or participation in any investigation, proceeding, or hearing under Title VII. " *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009) (summary order) (citing 42 U.S.C. 2000e-3(a)). "[T]he plaintiff need only have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *Kessler v. Westchester Cnty.*

---

[4] Rooke allegedly took away Shah's release time for the Microsoft Certification program before February 2, 2012. (*See* Am. Compl. at 52 ("When Dean Rooke starting working at Tunxis Community College[,] he took away my release time for the Microsoft Certification program. I complained to Dean Rooke that I was being treated unequally with faculty who were receiving release time for doing less time consuming work. This incident occurred in 2012. As evidence that I made this complaint of unequal treatment because of my ethnic background I requested the release time of all the other faculty."); *id.* at 36 ("When Dean Rooke took my release time away I told him that I was being unequally treated because other faculty members were being given release time for less time consuming activities. To prove that I was being unequally treated I asked for information on the release time given to other faculty members.") (citing *id.* Ex. 9, Feb 2, 2012, ECF 26-1 at 31).)

[5] Shah cannot establish that the August 21, 2012 "failure to promote" was "an adverse employment action" because, as discussed, he failed to apply for the specific position. *Stoner v. New York City Ballet Co.*, No. 99 CIV. 0196 (BSJ), 2002 WL 523270, at *17 (S.D.N.Y. Apr. 8, 2002) (denying plaintiff's motion to amend his complaint because "[p]laintiff cannot establish an adverse employment action as a part of his retaliatory failure to promote claim because he has failed to apply for the specific position he alleges he was denied").

*Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Shah filed a CHRO charge in 1988-89, which alleged that he was being denied opportunities for promotion due to unlawful discrimination. (Am. Compl. at 8.) In February 2012, Shah complained to Rooke that he "was being treated unequally with faculty who were receiving release time for doing less time consuming work." (*Id.* at 36, 52.) It is not clear whether, in his complaints, Shah specifically identified religion, national origin, or any other unlawful basis for such discrimination. "Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII." *Brummell v. Webster Cent. Sch. Dist.*, No. 06-CV-6437, 2009 WL 232789, at *5 (W.D.N.Y. Jan. 29, 2009) (citing cases). Shah alleges that he requested information about the release time for all other faculty members in order to gather evidence that the unequal treatment was because of his "ethnic background." (*Id.* at 52.) It is also not clear that Shah told Rooke that he believed that he faced discrimination because of his "ethnic background," but drawing all inferences in Shah's favor, the Court infers that Shah communicated this to Rooke. (*Id.* ("As evidence that I made this complaint of unequal treatment because of my ethnic background I requested the release time of all the other faculty.").)

At the meeting on May 21, 2013, Shah complained to Rooke about issues involving Blaszczynski as CIS Program Coordinator. (ECF No. 26-1 at 23.) Although, by itself, such complaints would not rise to the level of protected activity, taken together with Shah's previous complaints about discrimination in 1988-89 and February 2012, and viewing the allegations in the light most favorable to Shah, a *pro se* plaintiff, the Court concludes that, during the May 21,

2013 meeting Shah had "a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII," *Kessler*, 461 F.3d at 21, and Tunxis "could reasonably have understood[] that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d at 292. Therefore, Shah has sufficiently alleged that Tunxis was aware that he was participating in protected activity at the May 21, 2013 meeting.

Shah also satisfies the requirement to plead an adverse action. For an action to be considered adverse in the context of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler*, 461 F.3d at 207 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A "claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'" *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir.2002).

Shah's allegations are also sufficient to plead causation. A plaintiff can demonstrate causation "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000). There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the protected activity and an allegedly retaliatory action. The Second Circuit has found that seven months is "not prohibitively remote" to find a causal relationship in a *prima facie* case of retaliation. *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); *see Douglas v. City of Waterbury*, 494 F. Supp. 2d 112, 125 (D. Conn. 2007) ("Within the time period of one year, there is no firm rule. In some

15

cases, time periods ranging from twelve days to eight months have been found to show the necessary temporal proximity.").

Shah successfully alleges causation "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Gordon,* 232 F.3d at 117. On May 21, 2013, Shah was engaging in protected activity, and Rooke denied him a promotion during that meeting. Because the adverse action immediately followed Shah's alleged protected activity, it satisfies the causation requirement. Thus, Shah's claims that he was not promoted on May 21, 2013, in retaliation for his complaints about unlawful discrimination survive Defendant's motion to dismiss.

## IV.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's motion to dismiss. (ECF No. 27.) Because the Court has already granted Plaintiff an opportunity to amend his complaint, and he did so, the Court DENIES Plaintiff's motion for leave to file a second amended complaint. [6] (ECF No. 31.) Shah may, however, file an amended complaint within fourteen days adding only allegations addressed to any course cancellations in the summer of 2013. Finally, the Court DENIES as moot Defendant's motion to stay discovery pending resolution of the renewed motion to dismiss. (ECF No. 38.)

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

---

[6] The Court granted the Plaintiff an opportunity to amend his complaint to address the defects that Defendant had alleged in its motion to dismiss (ECF No. 21), and Plaintiff did so on February 5, 2015. Defendant renewed its motion to dismiss on February 11, 2015 (ECF No. 27), and incorporated its prior briefing by reference. On February 27, 2015, the same day that Shah filed a memorandum in opposition to the renewed motion to dismiss (ECF No. 32), Shah also filed a motion for leave to amend his Amended Complaint. (ECF No. 31.) The proposed second amended complaint is nearly identical to Shah's brief in opposition to Tunxis's motion to dismiss. Tunxis filed an objection to Shah's motion for leave to amend his complaint on March 6, 2015. (ECF No. 34.)

Dated:		Hartford, Connecticut
		July 14, 2015